US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

SEP 15 2016

DOUGLAS F. YOUNG, Clerk
By _____
    Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

LINDA CROY INDIVIDUALLY AND
AS ADMINISTRATRIX OF THE JAMES
R. CROY ESTATE                                          PLAINTIFF

Vs.  16-5253

THE UNITED STATES OF AMERICA                            DEFENDANT

## COMPLAINT

Plaintiff for her complaint against the Defendant states:

### Jurisdiction and Venue

1. This action is brought pursuant to 28 U.S.C. §§1346(b), 2671 et seq. and common law.

2. Venue is proper in this court, as all parties are located within the Western District of Arkansas and the causes of action arose within the Western District of Arkansas.

### The Parties

3. Plaintiff is the duly appointed, qualified and acting administratrix of the Estate of James R. Croy, deceased and is also the widow of James R. Croy deceased, suing in her individual capacity. (See Exhibit "A" attached hereto and made a part hereof by reference which is a copy of the Letters of Administration in the James R. Croy Estate.) At all times relevant to this complaint she was a resident of Benton County, Arkansas. Also at all times relevant to this complaint James R. Croy was a resident of Benton County, Arkansas.

4. Defendant, United States of America, at all times relevant to this complaint, by and through the United States Department of Veterans Affairs, a federal agency of Defendant, owned and operated the Veterans Administration Hospital in Fayetteville, Washington County, Arkansas (hereafter "VA Hospital"). This facility was and is operated for the benefit of United

States Veterans, including James R. Croy. Veterans are encouraged to utilize the facility for proper medical treatment.

5. At all times relevant herein, the doctors, nurses, administrators, clerical staff, orderlies, maintenance staff, grounds keepers, designers, and all other employees of the Veterans Hospital (Department of Veterans Affairs) in Fayetteville, Arkansas, were employed by the Veterans Hospital (Department of Veterans Affairs) and thus were employees of the United States of America.

6. Plaintiff sues the Defendant for its responsibility for the negligent acts of its employees in connection with the treatment of James R. Croy and for failure to provide a safe and proper means of waiting for pickup after treatment at its facilities.

## FACTS

7. James R. Croy was a 74 year old, honorably discharged, retired veteran when he scheduled a colonoscopy to be performed at the Veterans Hospital in Fayetteville, Arkansas on September 26, 2012.

8. On or about September 4, 2012, prior to the scheduled colonoscopy, James R. Croy had been assessed by his pulmonary physician and found to be suffering from worsening COPD and ordered to use oxygen when ambulating. This information was conveyed to James R. Croy's medical team at the VA Hospital prior to his scheduled colonoscopy.

9. In addition to the COPD described above, James R. Croy also had a medical history of Coronary Artery Disease; Type 2 diabetes (insulin dependent) Hypertension; Sleep Apnea; Osteoarthritis; Anemia; Memory Loss; Hyperlipidemia; Hypogonadism; and Aortic Valve Insufficiency, all well known by his medical team at the VA Hospital in Fayetteville.

10. On September 26, 2012, James R. Croy reported to the VA Hospital for his

scheduled colonoscopy. Prior to this procedure, he had been instructed to take only one half of his normal insulin dosage the morning of the procedure and Mr. Croy complied with this advice. He was accompanied by his wife, Plaintiff, to the procedure.

11. In preparation of the procedure, James R. Croy was given anesthesia intravenously consisting of 50 Milligrams of Demerol and 3 milligrams of Versed. The anesthesia was administered at 11:25 am on September 26, 2012.

12. The colonoscopy procedure was started shortly after the anesthesia was administered, but the procedure was aborted before it was completed at approximately 12:07 pm.

13. James R. Croy was discharged at 12:35 pm. and released to go home. Plaintiff asked the hospital staff if James R. Croy needed a wheelchair to be taken to his vehicle. James R. Croy was standing next to Plaintiff when she inquired about the wheelchair and did not refuse a wheelchair nor object to the use of a wheelchair. The discharging nurse replied that no wheelchair was needed and Plaintiff and James R. Croy were advised "to not take the stairs." The Doctor performing the colonoscopy did not talk to Plaintiff about the procedure or about James R. Croy's condition or ability to leave.

14. James R. Croy and Linda Croy left the hospital and stopped at the waiting area where James R. Croy waited for his wife to get the car so she could take him home. There were no benches, chairs hand rails nor any other type of support for patients waiting to be picked up or for use after delivery to the waiting area.

15. Plaintiff left James R. Croy in the waiting area, where he was leaning against a support, and started to get their vehicle from the parking lot. There were no parking spaces available in the immediate area, so the vehicle had to be parked in the parking lot, some distance from the waiting area.

16. Plaintiff had gone only a short distance toward the parking lot when she heard a commotion behind her, looked around and saw that James R. Croy had fallen and was laying on the ground. This was only a few minutes after James R. Croy had been discharged from the facility.

17. Plaintiff rushed back to her husband and found him laying on the ground, with his left leg at an odd angle and an apparent injury to his head.

18. Plaintiff asked for help and James R. Croy was taken to the emergency room where he was admitted with a broken hip and head laceration at about 12:51 pm. (Time of entry of notation in Emergency Department). The fall occurred between the time of discharge at 12:35 pm and the admission to the emergency room at 12:51 pm. Blood work was taken for the readmission in the Emergency Department at 12:46 pm. Even if the fall was immediately before admission to the emergency room, it was no longer than 80 minutes after the anesthesia was administered and probably less than one hour after the anesthesia was administered.

19. James R. Croy was evaluated in the VA Emergency Department and it was determined that he suffered from a laceration to his head and a broken left hip. Mr. Croy was transported to Washington Regional Medical Center where he underwent surgery to repair the damage to his left hip. Although the surgery was somewhat successful, Mr. Croy was left with a left leg shorter than the right leg, which caused him pain and problems for the rest of his life and left him partially disabled and unable to enjoy a full and complete life after that time.

20. James R. Croy died on February 20, 2016, without having fully recovered from the injuries caused by the fall at the VA Hospital. He also suffered from continuing disabilities from the fall and pain and suffering as a result of the injuries. Furthermore, the shorter left leg made physical therapy difficult and caused him additional trouble in ambulating after his partial

recovery and led to other falls and injuries that James R. Croy sustained as a result of the negligence of the employees of Defendant.

21. The VA Hospital held itself out as a proper medical facility and was to provide proper care to the veterans of the United States Military Services. James R. Croy was a veteran and thus entitled to proper care and treatment by the VA Hospital, operated by Defendant, United States of America.

22. Defendant, through its agents, failed to discharge its obligations to James R. Croy with a conscious disregard for his rights, care and safety. Agents of Defendant were fully aware of the medical condition of James R. Croy, the amount and timing of his anesthesia, the contributing factors that may have also contributed to his falling, the fact that he was discharged without oxygen and was told to walk to his vehicle against his prior medical orders.

23. James R. Croy filed a claim for recompense with the Veterans Administration on February 24, 2013, seeking $1,500,000.00 in damages based upon the negligence of Defendant and its agents, a copy of which is attached as Exhibit "B" and made a part hereof by reference. This claim was denied on or about August 6, 2013, but the denial was not mailed to James R. Croy until September 5, 2013.

24. On February 4, 2014, James R. Croy filed a request for reconsideration and submitted an additional information in support of his claim based upon the failure of the VA Hospital and its agents to provide adequate facilities where patients could wait for their pickup or delivery. A copy of the request for reconsideration filed by James R. Croy are attached hereto as Exhibit "C" and made a part hereof by reference.

25. Plaintiff filed her claim for recompense with the Department of Veterans Affairs based upon loss of consortium and the negligence of the VA Hospital and its agents on

September 16, 2014. A copy of the claim is attached hereto as Exhibit "D" and made a part hereof by reference. Plaintiff sought recompense in the amount of $250,000.

26. James R. Croy filed an amended and supplemental claim with the Department of Veterans Affairs based on the negligence of the VA Hospital and its agents and adding as a part of that claim the negligence in failure to provide a safe and adequate waiting area for patients who are being picked up or dropped off for treatment. A copy of the amended and supplemental claim is attached hereto as Exhibit "E" and made a part hereof by reference. No additional claim for damages was made at this time, but an additional claim of negligence was added.

27. James R. Croy died on February 20, 2016. The Department of Veterans Affairs denied the claims of James R. Croy and Linda Croy on March 16, 2016. This litigation is filed to pursue the claims against the Defendant as previously filed with the Department of Veterans Affairs. (See denial, attached hereto as Exhibit "F" and made a part hereof by reference.)

## COUNT I
### Negligent Treatement of James R. Croy

28. Plaintiff incorporates herein by reference all preceding allegations as if fully restated.

29. At the time James R. Croy was discharged from the VA Hospital following the anesthesia, he was still under the effects of anesthesia, was suffering from other medical conditions known by the staff of the VA Hospital and was not capable of walking to his car.

30. Although a wheelchair was requested for James R. Croy by his wife (Plaintiff) none was provided for the use of James R. Croy and no assistance was given to help Mr. Croy reach his vehicle.

31. The Defendant, by its agents, employees, and servants knew, or should have known

that there was a substantial risk in allowing James R. Croy to walk to his vehicle. Although Mr. Croy had been informed that he could not drive for twenty-four hours, he was not provided a wheelchair to go to his vehicle. At a minimum, he should have been kept at the VA Hospital until he had fully recovered from the effects of the anesthesia and should have been provided a wheelchair and assistance to go to his vehicle. Furthermore, the agents, employees and servants of Defendant were aware that James R. Croy had been ordered to use oxygen when ambulating, did not have his oxygen with him, and still did not place him in a wheel chair or provide assistance for his trip to his vehicle.

32. As a direct result of the negligence in releasing James R. Croy before he was able to walk to his car adequately, James R. Croy fell and suffered injury, including a laceration to his head and a broken hip. These injuries have caused James R. Croy pain, suffering, additional medical expenses and permanent disability, affecting the quality of his life.

## COUNT II

### Failure to provide adequate waiting facilities

33. Plaintiff repeats and re-alleges the averments of the foregoing paragraphs as if set forth in full.

34. The Veterans Hospital maintains its facilities for the treatment of Veterans of the United States Armed services. As a part of these facilities there are waiting areas where patients can be dropped off and picked up while their family parks the vehicle the patient arrived in or goes to get the vehicle that has been previously parked.

35. The manner in which the parking and admissions of the Veterans Hospital was laid out required patients to wait for a period of time while their vehicle was either being parked or was being retrieved for the purpose of picking the patient up.

36. The Defendant has and had a duty to provide a safe and adequate facility to protect the safety of its patients, including James R. Croy. Although required to provide a safe and adequate facility, Defendant failed to do so, in particular:

a. There were no benches, chairs, seats, handrails or other means for a patient to rest and safely wait while their vehicle was either being parked or retrieved.

b. The manner in which the facility was laid out and maintained required a substantial time of waiting while the vehicles were being retrieved.

c. No adequate means of transportation was provided (as in wheel chairs) at the waiting area to transport patients or to allow them to wait safely while their vehicle was being retrieved or parked.

37. As a direct result of the failure of Defendant to provide adequate waiting area seating, James R. Croy fell and injured himself because he was unable to walk the entire distance to his vehicle and there was no safe place to rest and wait.

38. As a direct result of the negligence in failing to provide safe and adequate seating on which patients could rest while waiting for their vehicle, James R. Croy fell and suffered injury, including a laceration to his head and a broken hip. These injuries have caused James R. Croy pain, suffering, additional medical expenses and permanent disability, affecting the quality of his life.

## COUNT III

## Loss of Consortium

39. Plaintiff, Linda Croy, repeats and re-alleges the averments of the foregoing paragraphs as if set forth in full.

40.  Plaintiff is the widow of James R. Croy and was married to James R. Croy at all times relevant to this litigation.

41.  Plaintiff was the wife of James R. Croy and due to the injuries to James R. Croy, caused by the negligence of Defendant through its agents, servants and employees, Plaintiff was deprived of the benefits of the marital relationship. Shortly after the injury to James R. Croy, Plaintiff was diagnosed with cancer and forced to undergo significant, painful, invasive and debilitating treatment without the care of her husband, James R. Croy, because he was incapacitated due to his injuries caused by the negligence of Plaintiff's employees. Also because of the injuries to James R. Croy, he was unable to attend treatments, hospital stays, doctor visits, chemotherapy treatments, radiology visits and similar events with Plaintiff and was unable to provide the care and support that he would otherwise have provided. Friends and family of both Plaintiff and James R. Croy had to assist in their care because James R. Croy was unable to care for himself and to care for Plaintiff.

42.  By reason of the injuries to her husband, James R. Croy, caused by the negligent acts and omissions of Defendant, acting though its agents, servants and employees, Plaintiff has suffered great mental anguish by being forced to witness the suffering endured by her husband, James R. Croy, which has impacted her own health. Furthermore, Plaintiff was denied the care, protection, companionship, and visitation with her husband because of the injuries to James R. Croy.

43.  By reason of the foregoing, Plaintiff has been damaged by the loss of consortium with her husband, including additional expenses for her and her husband's care, and should be awarded damages for her loss. Plaintiff has previously filed a claim for loss of consortium with the Department of Veterans Affairs in the amount of $250,000 and requests that she be awarded

that amount for her losses directly caused by the negligence of Defendant through its agents, servants and employees.

WHEREFORE, Plaintiff Linda Croy, as Administratrix of the Estate of James R. Croy, deceased, on behalf of the surviving beneficiaries of James R. Croy, and individually on her own behalf as the wife of James R. Croy, prays for judgment against the Defendant as follows:

1. For damages in an amount to compensate the Estate of James R. Croy for the injuries and damages sustained by him, including repayment of medical expenses, pain and suffering as a result of his injuries, and loss of enjoyment of life as a result of the injuries sustained by him. The amount previously requested for these damages was $1,500,000 and Plaintiff continues to request this amount.

2. For damages to Plaintiff for loss of consortium of her husband, James R. Croy, due to the injuries and damages sustained by him. The amount previously requested for these damages was $250,000 and Plaintiff continues to request this amount.

3. For the costs of litigating this case, including attorney fees.

4. For all other relief to which Plaintiff is entitled under Arkansas or Federal law.

Respectfully submitted,
Linda Croy Personally and as Administratrix
of the Estate of James R. Croy, Plaintiff

By: *Stephen L Hardin*

Stephen L. Hardin, Ark. Bar No. 79081
James G. Lingle, Ark. Bar No 76070
Lingle Law Firm
110 South Dixieland Rd.
Rogers, Arkansas 72758
479-636-7899 Phone
479-636-0095 Fax
Attorneys for Plaintiff

## VERIFICATION

STATE OF ARKANSAS    )
                     )ss
COUNTY OF BENTON     )

      I, Linda Croy, being first duly sworn, do hereby state and affirm that the statements and allegations contained in the foregoing document are true and correct to the best of my knowledge and belief.

                                                 *Linda Croy*
                                                 Linda Croy

      SUBSCRIBED AND SWORN to before me, a Notary Public, this 13th day of September, 2016.

                                               *Rosalia Garduño*
                                               Notary Public

My Commission Expires:

September 19, 2017



ROSALIA GARDUNO
MY COMMISSION # 12362370
EXPIRES: September 19, 2017
Benton County